HANNAN *v.* LARSEN.

HUSBAND AND WIFE—SALES—COMPETENCY.
    Conflicting testimony relating to the mental condition and
    competency of decedent considered, and *held*, to establish
    her capacity to execute a bill of sale of her household
    furniture and certain notes, with the advice and assist-
    ance of her attorney.

Appeal from Wayne; Van Zile, J: Submitted May
1, 1914. (Docket No. 52.) Decided July 24, 1914.

Bill by Charles S. Hannan, administrator of the
estate of Helen R. G. Hannan, deceased, against
Harold J. Larsen for the cancellation of a certain con-
veyance, for incompetency of the decedent. From a
decree for defendant, complainant appeals. Affirmed.

*Charles S. Hampton,* for complainant.

*Louis C. Wurzer,* for defendant.

BROOKE, J. The bill of complaint in this cause is
filed by complainant, as administrator of the estate of
Helen R. Hannan; its purpose being to secure the
cancellation of a bill of sale purporting to convey to
defendant certain household furniture, the property
of said decedent in her lifetime, and to compel defend-
ant to account for the proceeds of certain promissory
notes sold by defendant to said decedent.

The record discloses the following facts: Com-
plainant was married to said Helen R. Hannan in the
year 1894. She had become addicted to the use of
drugs prior to her marriage, but was supposed to have
overcome her habit at that time. Later she resumed
the habit, and seems to have ultimately become con-
firmed in the use of such drugs as chloral and sul-
phonal.

Frequent separations for short periods occurred between complainant and his wife prior to 1908, in which year decedent left complainant, and he filed a bill for divorce. In May, 1909, she was committed to a detention hospital in Chicago and was adjudged insane. A short time thereafter she secured her release and came to Detroit, where a reconciliation was effected between herself and complainant, and they continued to live together for upwards of a year, when they finally separated in January, 1911.

It appears that decedent was a woman of considerable property, and that upon the resumption of marital relations in November, 1909, she loaned to complainant $8,600, taking from him his promissory note for that sum secured by a certificate of stock for $10,000 in the Grainger-Hannan Company, which concern complainant had assisted in organizing.

When the final separation occurred, Mr. Hampton, complainant's solicitor, represented the decedent, while Mr. Alfred Lucking represented complainant, in the settlement of the financial differences between the parties. By the terms of the settlement complainant's indebtedness was ascertained and divided into a series of notes of $150 each, payable monthly.

Decedent sought and secured a divorce from complainant December 15, 1911. In the same month decedent signed an order authorizing defendant to dispose of the unpaid notes (48 in number), who, after attempting to sell them elsewhere, finally, about January 13, 1912, sold them to complainant for the sum of $4,675. Of this sum defendant paid to decedent $3,500, retaining the balance and taking a receipt in full from decedent covering the transaction.

On April 12, 1912, decedent executed a formal bill of sale to defendant of her household furniture, which at that time was in storage in a Chicago warehouse. The expressed consideration is stated as "$1 and other valuable consideration," but defendant claims to have

paid therefor the sum of $500. He also claims to have
paid an additional sum of $200 for certain rugs, not
included in the bill of sale, but ordered by decedent
to be shipped to him from Chicago.

On April 25, 1912, decedent, having in the mean-
time gone from Chicago to Mt. Clemens and thence
to Detroit, was discovered, in her room at the Hotel
Pontchartrain, dead.   Complainant was appointed
administrator of the estate of his divorced wife, and
this suit followed. Broadly the bill charges, and com-
plainant by evidence sought to establish, the fact that
on January 13, 1912, and on April 12, 1912, decedent
was mentally incompetent to transact the business
evidenced by the instruments she signed on those
days. Bearing upon this question much and conflict-
ing testimony was introduced.

Comment upon this feature of the case is unneces-
sary, except to point out that much of the evidence
introduced on behalf of complainant, if true and
capable of sustaining the inferences drawn therefrom
by complainant, would tend to establish the fact that
decedent was mentally incompetent for several years
prior to her death. Yet we find that during this
period and after the adjudication of insanity, now
strongly relied upon by complainant, complainant did
not hesitate to do much and important business with
decedent, evidently treating (if not considering) her
as *compos mentis*. In 1909 he borrowed from her
$8,600, and thereafter lived with her for more than
a year after having filed a bill for divorce. Ordinarily
husbands do not seek to divorce insane wives. In
January, 1911, he dealt with her as a sane woman in
the settlement of his indebtedness to her, and Mr.
Hampton, complainant's solicitor, represented her in
that transaction. It is inconceivable that either com-
plainant or Mr. Hampton believed her incompetent at
that time.

In December, 1911, decedent secured a divorce.

Though personally served, complainant gave no hint to the court that his wife was mentally unbalanced. Her condition was such that her solicitor in that cause discovered no infirmity, and the court, in granting the decree, must certainly have been convinced of her sanity.

On January 13, 1912, but three months before her death, complainant himself bought from her through defendant, at a heavy discount, the notes he had given her. In all his dealings with his wife, we must assume that complainant honestly believed her to be sane, otherwise he would stand convicted of the grossest imposition, not only upon her, but upon the court. His acts in the premises are, in our opinion, more convincing of her sanity than his testimony to the contrary. A careful examination of the record convinces us that the decedent sometimes, perhaps frequently, while under the influence of drugs, acted irrationally, but that up to the day of her death she continued to be possessed of such mental vigor as to enable her to transact her business affairs, some of which were of very considerable magnitude and importance, without exciting a doubt as to her sanity in the minds of those with whom she dealt. It is true that her lawyers in Chicago testified that in their opinion she was mentally deficient in the early part of the year 1912. It is, however, significant that these same attorneys rendered her professional services and received compensation therefor during this identical period, and that their opinions given in evidence were based upon facts ascertained after the services were rendered and upon subsequent reflection.

It is urged by complainant that the consideration ($700) for the household goods and rugs is so grossly inadequate as in itself to require relief. These goods had been in use some 15 years. The learned circuit judge held, and we are disposed to agree with his finding, that the consideration was not inadequate.

Further complaint is made of the admission of evidence of the defendant equally within the knowledge of the deceased. It is not necessary to predicate our conclusions upon such evidence. The conceded facts and the written evidence in our opinion fully warrant the result.

The decree is affirmed, with costs.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.